

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00194-CR

_____

FABIAN DELEON JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1824783

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Fabian DeLeon Jr. appeals his two convictions for assaulting and choking his wife. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(B). He raises eleven issues—nine challenging the trial court's admission of evidence, a tenth challenging the trial court's denial of his motion for a mistrial, and an eleventh alleging cumulative harm from the previous ten errors. Because none of DeLeon's complaints identify a preserved, harmful, non-duplicative error, there is no harm for us to cumulate, and we will affirm.

## I. Background

In a fit of anger one night, DeLeon pushed his wife, pulled her by her hair, threw shoes at her, bit her, punched her in the face, and choked her. He was indicted for aggravated assault with a deadly weapon[1] and for assault by impeding the breath or circulation of a family member. He denied committing either offense, and the case proceeded to a jury trial.

### A. Trial Exhibits

In the weeks leading up to trial, the State sent DeLeon several last-minute items, including potential trial exhibits. Consequently, DeLeon moved to either exclude the recently disclosed items or to delay the trial's start. DeLeon presented his

---

[1]DeLeon's wife further alleged that he threatened her with a knife, but the jury's verdict indicates that it did not believe that aspect of her testimony.

motion on the morning that trial was scheduled to begin, and the trial court granted his request for a delay, postponing opening statements until the following morning.

Once the presentation of evidence began, the State offered numerous exhibits, including (1) a 911 call recording from the night of the incident, (2) a police department report of the incident, and (3) DeLeon's wife's incident-related medical records. DeLeon objected that these three exhibits in particular were at least partially inadmissible because, although they were accompanied by either business records affidavits or testimony from a records custodian, he claimed that they contained hearsay within hearsay, statements that violated the Confrontation Clause, or both. DeLeon did not, however, identify which portions of the three exhibits were inadmissible. The trial court overruled his objections.

In addition to the three partially inadmissible exhibits, DeLeon also objected to many of the photographs that the State offered into evidence. The State's photographs depicted everything from DeLeon's appearance at the jail after the incident, to the knife that he was believed to have wielded, to the couple's apartment where the assaults occurred, to DeLeon's wife's injuries. For each batch of photographs, the State elicited testimony that, based on the sponsoring witness's personal familiarity with the items shown, the photographs accurately depicted what they purported to depict. In his objections, DeLeon argued that because the sponsoring witnesses had not taken the photographs, they could not confirm that the

3

photographs were unaltered, accurate depictions of the items as of the time the photographs were taken. These objections were overruled.

## B.    Trial Testimony

DeLeon's objections were not limited to exhibits; he also objected to aspects of the testimony, including the testimony from his wife and from one of the law enforcement officers who had responded to the couple's apartment on the night of the assaults.

DeLeon objected to his wife's discussion of his marital misconduct—his alleged infidelity, destruction of their marriage license, and similar actions. According to DeLeon, the infidelity was irrelevant, and the State's pretrial notice of its intent to discuss his marital misconduct had not been sufficiently detailed to satisfy Article 37.07, Section 3(g) of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g). The trial court overruled DeLeon's objections.

Then, after DeLeon's wife testified, the State called several of the law enforcement officers who had responded to the incident. One of the responding officers told the jury how, when he arrived at the couple's apartment that night, DeLeon was no longer there, so he had searched for and located DeLeon just outside the apartment complex. The officer described DeLeon's behavior and statements to him, and after the officer's body-camera video was played for the jury, the officer confirmed what the jury had just seen: that, contrary to DeLeon's trial assertions, DeLeon had "[n]ever indicate[d] to [the officer] that he was injured in any way" and

4

had "never said, [his wife] did this to [him]." DeLeon did not object to this testimony.

He did object later, though, when another responding officer testified similarly. The second officer described how he had placed DeLeon in the back of a police car at the apartment complex and had observed DeLeon's behavior during that time. This officer provided both body-camera and dash-camera video footage that showed DeLeon's begging the officers to let him talk to his wife, yelling his wife's name, squirming in the backseat of the car, and intermittently crying. After a portion of the videos had been played for the jury, the State asked the officer whether DeLeon had "ever t[old him] anything about his wife ever kicking him repeatedly or pushing him." This time, DeLeon objected that the question called for an improper comment on his right to remain silent. But the objection was overruled, and the officer proceeded to confirm that "No," DeLeon had not mentioned his wife's kicking or pushing him.

## C. Motion for Mistrial

In addition to DeLeon's evidentiary objections, he also moved for a mistrial at one point. The motion stemmed from a photograph that depicted DeLeon's wife's injuries and that had been taken by a forensic nurse on the night of the incident.

The relevant photograph was part of a batch of forensic photographs that the State offered into evidence during DeLeon's wife's testimony. DeLeon objected, claiming that his wife could not authenticate the forensic photographs and noting that one photograph in particular—a different photograph from the one later relied upon

5

for his mistrial motion—appeared to have used "some sort of filter or some sort of ID."  The State explained that the forensic photographs had been taken with "a specialized camera . . . that [reveals] physical bruising under the skin" and that it anticipated calling "an expert who w[ould] testify about that later" to explain "[a]bout the viewer and how these photos are made."  The State pointed to a business records affidavit for authentication and stated that, when it had subpoenaed the forensic exam from the hospital, all of the forensic photographs had been provided to it on a single disc with a specialized photograph viewer.  The State also offered an accompanying medical chart that noted the forensic nurse's use of "Cortex Flo"[2] to take "medical forensic photography."[3]  The trial court sustained DeLeon's objection to the one photograph that appeared on its face to have used "some sort of filter," but the court admitted the other photographs—including the one later relied upon for DeLeon's mistrial motion—into evidence.

True to its word, the State called the forensic nurse to discuss the forensic photography the next day.  The nurse described how some of her photographs of DeLeon's wife's injuries had been taken with "a special forensic camera that uses some UV light that penetrates the top layer of the skin so you can see the veins, [and]

---

[2]The State explained that the specialized photograph viewer that had accompanied the subpoenaed disc of photographs was "called Cortex Flo[] Viewer."

[3]At the time, the chart was admitted only for record purposes; later, a redacted version was admitted for all purposes.  Both versions documented the nurse's use of Cortex Flo.

you can see deep into the tissue where injuries may be." DeLeon moved for a mistrial, arguing that when the photographs had been admitted into evidence the day before, they had been represented to be unaltered and that the State had not disclosed that they had been taken using "enhanced imagery." The trial court denied the motion for a mistrial, commenting that the exhibits had already been admitted and that DeLeon could cross-examine the forensic nurse regarding the use of "enhanced imagery."

## D.    Verdict and Judgments

Ultimately, after hearing the evidence, the jury found DeLeon not guilty of aggravated assault with a deadly weapon but guilty of the lesser-included offense of assault causing bodily injury and guilty of assault by impeding the breath or circulation of a family member. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(B). Following a punishment hearing, the jury assessed (1) for assault causing bodily injury, confinement for one year and a $4,000 fine; and (2) for assault by impeding a family member's breath or circulation, confinement for 15 years and a $10,000 fine.

## II. Discussion

DeLeon challenges (1) the trial court's admission of three categories of exhibits—the late-disclosed, purportedly partially inadmissible, and photographic exhibits—and two portions of testimony—the portions involving his marital misconduct and non-statements to police; (2) the trial court's denial of his motion for

7

a mistrial; and (3) the cumulative harm allegedly caused by the previously mentioned rulings.[4]

## A. Evidentiary Challenges

Nine of DeLeon's eleven appellate issues allege that the trial court abused its discretion by admitting exhibits or testimony.[5]

### 1. Standard of Review

Generally, to obtain reversal based on the trial court's admission of evidence, (1) the defendant must have preserved his complaint by raising a specific objection or request for relief, (2) the trial court must have abused its discretion by ruling adversely, (3) the defendant must not have invited the erroneous ruling, and (4) the error must have harmed the defendant by impacting his substantial rights. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1); *Woodall v. State*, 336 S.W.3d 634, 644–45 (Tex. Crim. App. 2011) (recognizing and applying law of invited error); *Lehrman v. State*, No. 02-25-00057-CR, 2025 WL 1668341, at *2 (Tex. App.—Fort Worth June 12, 2025, no

---

[4]The State argues that DeLeon failed to adequately brief almost all of his issues. *See* Tex. R. App. P. 38.1(i) (requiring appellant's legal argument to contain "appropriate citations to authorities and to the record"). It highlights DeLeon's conclusory discussion of harm, noting that, for nine of DeLeon's eleven appellate issues, he does not provide any harm-related citations to authority or substantive legal analysis. *Cf. Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) (reiterating that appellate courts "ha[ve] no obligation to construct and compose appellant's issues" or to consider complaints that are inadequately briefed). Although we do not resolve DeLeon's appeal on this basis, the State's objections are well taken.

[5]DeLeon's nine evidentiary challenges are reordered for organizational purposes.

pet. h.) (mem. op., not designated for publication) (noting standard of review for ruling on the admission of evidence); *Simpson v. State*, No. 02-23-00266-CR, 2024 WL 3977222, at *4 (Tex. App.—Fort Worth Aug. 29, 2024, no pet.) (mem. op., not designated for publication) (reciting preservation and harm requirements); *Norris v. State*, No. 02-23-00298-CR, 2024 WL 3458077, at *2 (Tex. App.—Fort Worth July 18, 2024, pet. ref'd) (mem. op., not designated for publication) (stating standard of review and harm requirements).  DeLeon's evidentiary challenges each fail to meet at least one of these reversal requirements.

### 2.    Trial Exhibits

DeLeon claims that the trial court abused its discretion by admitting the (1) late-disclosed exhibits, (2) purportedly partially inadmissible records, and (3) photographs that allegedly lacked proper authentication.

### a.    Late-Disclosed Items:  No Preservation[6]

DeLeon first asserts that the trial court erred by failing to exclude the items that the State disclosed on the eve of trial.[7]  But the trial court granted DeLeon's requested alternative remedy:  a continuance.

---

[6]DeLeon challenges the exhibits' admission in issues one and two of his brief.

[7]While DeLeon describes several of the late-disclosed items, he does not identify which of those items were actually admitted into evidence.  Some of the late-disclosed items that DeLeon references—such as a "[s]upplemental witness list," "[n]otes on discussion between prosecutor an[d] officers," "screenshots of jail call," and "screenshots of churchgoers['] text messages to victim"—do not describe anything in the volume of trial exhibits.  And while other listed items could describe

9

DeLeon's written motion proposed a continuance as an alternative to exclusion of the late-disclosed items, and DeLeon verbally reminded the trial court of that option when he presented his motion on the first day of trial. The trial court asked DeLeon if continuing the case until the following morning "would . . . take care of [the] motion," and DeLeon acknowledged that doing so would address the motion "from a preparation standpoint." Based on this discussion, the trial court ruled that it "w[ould] . . . give [DeLeon] th[e] afternoon" and delay the presentation of evidence until the following morning.

DeLeon's proposal and acceptance of a continuance as an alternative remedy undermines his appellate complaint for two reasons. First, DeLeon cannot complain of a ruling that he invited. *See Woodall*, 336 S.W.3d at 644–46 ("The law of invited error provides that a party cannot take advantage of an error that it invited or caused, even if such error is fundamental."); *Ripkowski v. State*, 61 S.W.3d 378, 388–89 (Tex. Crim. App. 2001) (noting that "the definition of what can constitute error excludes those actions of the trial court actually sought by the party to that tribunal" (internal quotation marks omitted)); *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (discussing doctrine of invited error, clarifying that it is "properly thought of, not as a

something in the volume of trial exhibits—such as "photos of [the] knife"—there is no way to tell whether the trial exhibits are the same as the late-disclosed items. Nonetheless, because DeLeon invited the continuance below rather than objecting to it as an alternative remedy, we need not discuss the merits of DeLeon's failure to identify the late-disclosed exhibits. *See* Tex. R. App. P. 47.1.

10

species of waiver, but as estoppel," and explaining that it "estops a party from making an appellate error of an action it induced"). "[B]y proposing alternatives[, DeLeon] is estopped from complaining on appeal about the judge having accepted one of them." *Jones v. State*, 119 S.W.3d 766, 784 (Tex. Crim. App. 2003) (holding defendant could not complain of juror's discharge when he "proposed discharge as an alternative to mistrial at least three times"); *Pena v. State*, No. 08-16-00236-CR, 2019 WL 1374152, at *22 (Tex. App.—El Paso Mar. 27, 2019, pet. ref'd) (op. on reh'g, not designated for publication) (noting that, even if complaint had not been waived by acquiescing in trial court's granting of alternative remedy, the defendant was "estopped from complaining on appeal about the trial court's decision to only grant a continuance for the afternoon . . . when [his] trial counsel induced the trial court's action").

Second, to the extent that DeLeon took issue with the alternative remedy of a continuance,[8] he did not notify the trial court of that fact. *See* Tex. R. App. P. 33.1(a)(1)(A) (stating that, "[a]s a prerequisite to presenting a complaint for appellate review," the party must have "ma[d]e the trial court aware of the complaint"); *Dunn v. State*, 819 S.W.2d 510, 523–25 (Tex. Crim. App. 1991) (holding defendant failed to

---

[8]DeLeon heavily relies on *State v. Heath*, 696 S.W.3d 677 (Tex. Crim. App. 2024), claiming that because the trial court acted within its discretion by excluding late-disclosed evidence in that case, the trial court here should have done the same thing. But even in *Heath*, the Court of Criminal Appeals "acknowledge[d] that a continuance would [have] be[en] a much more restrained solution" and clarified that the question on appeal was "whether the trial court had the authority to impose the remedy it did"—not whether "the trial court could have imposed a lesser remedy." *Id.* at 707–08.

11

preserve challenge when, despite requesting to make an opening statement, he acquiesced in trial court's denial of opportunity); *Pena*, 2019 WL 1374152, at *22 (holding defendant failed to preserve complaint regarding week-long continuance by "request[ing] and then acquiesc[ing] to the trial court's action" in granting a shorter continuance and by failing to secure an adverse ruling). And "mak[ing] the trial court aware of [a party's] complaint" is a foundational "prerequisite to presenting [the] complaint for appellate review." Tex. R. App. P. 33.1(a)(1)(A).

For both reasons, DeLeon's challenges to the late-disclosed items fail, and we overrule his two corresponding appellate issues.

### b. Purportedly Partially Inadmissible Records: No Preservation[9]

DeLeon next raises three issues challenging the admission of exhibits that, according to him, were partially inadmissible.[10] He asserts that the 911 call recording, the police department records, and his wife's medical records all contained inadmissible statements that should have been redacted—as hearsay within hearsay, under the Confrontation Clause, or both.

---

[9]DeLeon challenges the admission of the partially inadmissible records in issues three, six, and eight of his appellate brief.

[10]DeLeon also criticizes the business records affidavits accompanying two of the three purportedly partially inadmissible records, but he did not object to the affidavits' sufficiency at trial. *See* Tex. R. App. P. 33.1(a).

But "[w]hen an exhibit contains both admissible and inadmissible evidence, the burden is on the objecting party to specifically point out which portion is inadmissible." *Simpson*, 2024 WL 3977222, at *6 (quoting *Norris*, 2024 WL 3458077, at *2); *see Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009). If a defendant asserts that portions of an exhibit contain inadmissible hearsay or testimonial statements, then he "must identify the objectionable portions of the exhibit to preserve error." *Simpson*, 2024 WL 3977222, at *6–7 (holding defendant failed to preserve hearsay within hearsay objections by failing to identify what aspects were hearsay); *see Whitaker*, 286 S.W.3d at 369 (holding defendant failed to preserve objections because he "did not specifically point out which portions of the audiotapes were objected to as inadmissible"); *Norris*, 2024 WL 3458077, at *2–3 (holding defendant failed to preserve objection that portions of exhibit were unfairly prejudicial by failing to specifically identify inadmissible portions).

DeLeon objected to the 911 call recording as containing hearsay within hearsay, but he did not specify which portions of the recording were admissible and which were inadmissible. The same is true for DeLeon's objections to the police department records and to his wife's medical records—he raised hearsay within hearsay and Confrontation Clause objections, but he did not specify which statements within the records were inadmissible.

By failing to point out which portions of the three purportedly partially inadmissible exhibits were objectionable, DeLeon failed to preserve his challenges for

13

review.  *See* Tex. R. App. P. 33.1(a)(1)(A); *Whitaker*, 286 S.W.3d at 369; *Simpson*, 2024 WL 3977222, at *6–7; *Norris*, 2024 WL 3458077, at *2–3.  We overrule his three corresponding appellate issues.

### c.    Photographs:  No Preservation or Error[11]

DeLeon next asserts that 38 different photographic exhibits—photographs depicting him at the jail following the assaults, the knife he allegedly wielded, the apartment complex where he and his wife lived, the interior of their apartment, and his wife's injuries—were improperly authenticated and should not have been admitted.  *See generally* Tex. R. Evid. 901.

But for the ten jailhouse photographs, DeLeon did not raise an authentication objection in the trial court and thus failed to preserve his challenge.  *See* Tex. R. App. P. 33.1(a)(1) (requiring, "[a]s a prerequisite to presenting a complaint for appellate review," that the complaint have been "made to the trial court").

Moreover, the State could satisfy the authentication requirement with evidence showing that "the item [wa]s what [the State] claim[ed] it [wa]s," Tex. R. Evid. 901(a), and all 38 of the challenged photographs were accompanied by testimony that they accurately depicted what they purported to depict:

- For the ten challenged jailhouse photographs, an officer present at the time the photographs were taken confirmed that they "accurately depict[ed] Fabian DeLeon[] Jr. on [the day of the assaults]."

---

[11]DeLeon challenges the photographs' admission in issue nine of his brief.

14

- For the one challenged photograph of a knife, DeLeon's wife testified that it was an accurate reflection of the knife used in the incident.

- For the fifteen challenged photographs of the apartment complex, a neighbor testified that four of them reflected the complex during the time she lived there—which included the time of the incident—and a police officer confirmed that the other eleven photographs "accurately depict[ed] how it looked that night when [he] responded," apart from the difference in time of day.

- For the six challenged photographs of the couple's apartment's interior, DeLeon's wife testified that the photographs accurately depicted the apartment on the day of the incident.

- For the six challenged photographs of DeLeon's wife's injuries, his wife confirmed that they had been taken by law enforcement officers on the night of the incident, that they were "accurate," and that they "document[ed] the injuries that [DeLeon] caused to [her]."

According to DeLeon, this testimony was insufficient to authenticate the photographs because the sponsoring witnesses "did not know when the[] photos were taken[ and] they did not take the photographs or weren't sure who took them."

But "Rule 901 requires a showing that 'the item is what the proponent claims it is'—no more, no less." *Lehrman*, 2025 WL 1668341, at *2 (quoting Tex. R. Evid. 901(a)); *see* Tex. R. Evid. 901(a). The witnesses did not need to know when the photographs had been taken or who took them; they needed to confirm only that, based on their personal knowledge, the images accurately depicted what they purported to depict. Tex. R. Evid. 901(b)(1) (contemplating authentication through the "[t]estimony of a [w]itness with [k]nowlege . . . that an item is what it is claimed to

15

be"). Because the sponsoring witnesses all testified to as much, the trial court did not abuse its discretion by denying DeLeon's authentication objections.

We overrule DeLeon's appellate challenge to the photographs' admission.[12]

### 3.  Trial Testimony

In addition to his exhibit-related appellate complaints, DeLeon also challenges the trial court's admission of testimony (1) regarding his marital misconduct and (2) commenting on what he said—or did not say—to the police.

### a.  Marital-Misconduct Testimony:  No Error[13]

First, DeLeon claims that his wife's discussion of his infidelity and other marital misconduct should have been excluded because (1) it was irrelevant and (2) the State's pretrial notice did not include the specific information required by Article 37.07, Section 3(g) of the Code of Criminal Procedure.  Both arguments rely on legally flawed premises.

---

[12]Plus, many of the photographs were duplicative of other evidence that is not challenged on appeal.  For example, the challenged knife photograph was just one of several photographs of the knife, and the other photographs of it were admitted without objection.  Similarly, the six challenged photographs of DeLeon's wife's injuries were dwarfed by numerous other forensic photographs that showed her injuries in greater detail.  And the photographs of the apartment's interior and of the grounds of the apartment complex showed what was already reflected on the responding officers' body-camera footage, which was admitted without objection.

[13]DeLeon challenges the admission of his wife's marital-misconduct testimony in issues four and five of his brief.

16

Regarding DeLeon's relevance complaint, he asserts—as he did in the trial court—that because his wife "was not a witness to any che[a]ting," her belief that he was cheating "was pure hearsay and therefore not relevant." But lack of personal knowledge, hearsay, and relevance are independent legal concepts; just because a person hears something through the grapevine does not mean that the information is irrelevant, i.e., that it does not make a fact of consequence more or less probable. *See* Tex. R. Evid. 401 (defining relevance), 701 (addressing testimony of lay witnesses based on personal knowledge), 801(d) (defining hearsay); *cf. Neaves v. State*, 767 S.W.2d 784, 787 n.4 (Tex. Crim. App. 1989) (noting that "hearsay evidence may be used to establish probable cause" and although "that same hearsay evidence might also be relevant to show guilt at the trial on the merits, it would be objectionable in that forum"). So even assuming that—as DeLeon argues—his wife learned about his cheating secondhand, the secondhand nature of that knowledge would not have required the trial court to sustain his relevance objection.

DeLeon's Article 37.07 challenge to his wife's testimony is also legally flawed. He asserts that the trial court should have excluded his wife's discussion of his marital misconduct because the State's pretrial notice did not include the specific information required by Article 37.07, Section 3(g) of the Code of Criminal Procedure. But by its own terms, Section 3 applies to evidence that is offered "after a finding of guilty." Tex. Code Crim. Proc. Ann. art. 37.07, § 3. The challenged marital-misconduct testimony occurred during the guilt–innocence phase of trial—not "after a finding of

guilty." *Id.*; *cf. Luna v. State*, 687 S.W.3d 79, 100–01 & n.4 (Tex. App.—Eastland 2024, pet. ref'd) (holding defendant inadequately briefed challenge to admission of guilt–innocence evidence showing bad acts and noting that, "to [the court's] confusion," the defendant cited Section 3(g), which pertained to punishment evidence and "[wa]s inapplicable"). Thus, at the time DeLeon objected, Section 3(g) had not been triggered.[14] *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g); *Mostiller v. State*, No. 14-01-01193-CR, 2003 WL 124294, at *2 (Tex. App.—Houston [14th Dist.] Jan. 16, 2003, no pet.) (mem. op., not designated for publication) (rejecting similar challenge under Section 3(g) in part because "[S]ection 3(g), only applies to an offer of extraneous offense evidence during the punishment phase of trial" and the defendant "[wa]s complaining about evidence offered during guilt/innocence").

Because the trial court did not abuse its discretion by rejecting DeLeon's legally flawed objections, we overrule his two appellate issues challenging the admission of his wife's marital-misconduct testimony.

---

[14]While other evidentiary or statutory rules may have required the State to provide reasonable notice of its intent to introduce guilt–innocence evidence showing DeLeon's marital misconduct, *cf.* Tex. R. Evid. 404(b)(2), we do not address that possibility because DeLeon's appellate complaint relies solely on Article 37.07, § 3(g), which is inapplicable. *See* Tex. R. App. P. 47.1; *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (reiterating that, to preserve a complaint for review, the party must raise the complaint in both the trial and appellate courts and "[t]he point of error on appeal must comport with the objection made at trial").

### b. Testimony Commenting on Non-Statements: No Harm[15]

DeLeon also asserts that the trial court abused its discretion by allowing one of the responding police officers—the officer who monitored DeLeon in the police car—to testify "about [DeLeon's] silence."[16] Specifically, DeLeon claims that the trial court should have excluded the officer's testimony that while DeLeon was verbally protesting his confinement in the backseat of a police car, his ongoing pleas to talk to his wife did not include any mention of his wife's having kicked or pushed him.

But the challenged testimony duplicated evidence that the jury had already heard, and the improper admission of evidence is rendered harmless "if the same facts are shown by other[, duplicative] evidence which is not challenged." *Simpson*, 2024 WL 3977222, at *4 (quoting *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998)); *see Norris*, 2024 WL 3458077, at *3 (recognizing that improper admission of evidence is "rendered harmless if other evidence that proves the same facts as the inadmissible evidence is admitted without objection"); *Salazar v. State*, 131 S.W.3d 210, 214–15 (Tex. App.—Fort Worth 2004, pet. ref'd). Before the challenged testimony was heard, the officer's body-camera and dash-camera videos were admitted into

---

[15]DeLeon challenges the admission of the officer's testimony in issue seven of his brief.

[16]Portions of DeLeon's argument appear to assert that the State's question was itself an impermissible comment on his silence. But at trial, DeLeon objected to the testimony that the State sought to elicit rather than objecting to the State's alleged commentary. We thus construe DeLeon's appellate complaint in accordance with his preserved trial court objection.

evidence without objection, and the jurors watched a portion of these videos, seeing DeLeon's non-statements for themselves.

Moreover, another responding officer—the officer who located DeLeon on the night of the incident—had already testified to DeLeon's non-statements. The other officer confirmed that, in DeLeon's interactions with him at the complex, DeLeon had "[n]ever indicate[d] to [him] that he was injured in any way" and had "never said, [the complainant] did this to me." DeLeon did not object to this testimony.

Because the challenged testimony was substantially similar to other, unchallenged evidence, any error in the duplicative testimony's admission was harmless. *See Salazar*, 131 S.W.3d 210, 214–15 (rejecting defendant's challenge to admission of testimony regarding his non-statements to police in part because defendant failed to object to substantially similar testimony); *see also Norris*, 2024 WL 3458077, at *4 (holding that admission of testimony relaying complainant's hearsay statements was harmless when complainant testified to same facts). We overrule DeLeon's last evidentiary issue.

## B. Mistrial Challenge

In his tenth issue, DeLeon contends that the trial court abused its discretion by denying his motion for a mistrial. According to DeLeon, a mistrial was warranted because the State failed to disclose that a forensic photograph had been "altered" (i.e., taken using a specialized medical camera) until the day after the photograph's

20

admission into evidence on false pretenses.[17] But no such false pretenses existed, and—for the same reason—DeLeon's motion was untimely.

"To preserve a mistrial-warranting error for appellate review, the defendant's motion for mistrial must be timely," and it "is timely only if it is made as soon as the grounds for it become apparent." *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007); *Simpson*, 2024 WL 3977222, at *13.

For purposes of our analysis, we assume that the use of the specialized forensic photography equipment amounts to an "alteration." But even if we further assume that such "alteration" could provide grounds for a mistrial, those grounds became apparent when the forensic photographs were first admitted into evidence.

When the State offered the forensic photographs, it noted that they had been taken with "a specialized camera" and stated that it anticipated calling an expert later in the trial to explain "[a]bout the [camera's] viewer and how these photos are made." Although DeLeon objected to one forensic photograph in particular, the State did not hide the fact that other forensic photographs had been taken with the same specialized equipment. Yet it was not until the next day, when the forensic nurse

---

[17]To further support his mistrial complaint, DeLeon alludes to his wife's having given false testimony regarding the photographs' unaltered state. But no such testimony was given. When the photographs were offered into evidence, DeLeon's wife testified that the photographs had been taken by a nurse and that they accurately depicted her injuries. She acknowledged, though, that she had not taken the photographs and that, although she did not believe the photographs had been altered, she did not know for certain.

explained the specialized nature of the photography in further detail, that DeLeon moved for a mistrial.

Because the motion for mistrial was not made at the time that the grounds for it—the enhanced nature of the forensic photographs—became apparent, DeLeon failed to timely preserve his complaint. *See Simpson*, 2024 WL 3977222, at *12–14 (holding defendant failed to preserve mistrial complaint when he delayed moving for a mistrial based on State's comment on his decision not to testify). We overrule this issue.

## C.    Cumulative Harm Challenge

Finally, in his eleventh issue, DeLeon asserts that the ten trial court rulings previously discussed—the complaints rejected above—cumulatively harmed him. But "[alt]hough it is possible for a number of errors to cumulatively rise to the point where they become harmful, we have never found that 'non-errors may in their cumulative effect cause error.'" *Id.* at *14 (quoting *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009)). And, here, DeLeon has not raised any preserved errors involving the erroneous admission of non-duplicative evidence. Because there are no such errors to cumulate, we overrule DeLeon's final issue. *See id.* (holding similarly); *see also Jenkins v. State*, 493 S.W.3d 583, 613 (Tex. Crim. App. 2016) (rejecting cumulative harm argument when court "ha[d] not concluded that the trial court erred with respect to any [of the alleged] point[s] of error" so "there [wa]s no error to cumulate").

### III. Conclusion

Having overruled all eleven of DeLeon's issues, we affirm the trial court's judgments.  *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 24, 2025